KAREN MORRIS
General Counsel
DANIEL S. LIEBMAN
Deputy General Counsel
KENNETH J. COOPER
Assistant General Counsel
MARK R. SNYDER (CA 109430)
Attorney
PENSION BENEFIT GUARANTY CORPORATION
445 12th St SW,
Washington, D.C. 20024-2101
Tel.: (202) 229-3423
Fax: (202) 326-4112
Email: snyder.mark@pbgc.gov *and*
   efilepbgc.gov;

*Attorneys for Pension Benefit Guaranty Corporation*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| Pension Benefit Guaranty Corporation, as statutory trustee of the Sears Holdings Pension Plan,<br><br>Plaintiff,<br><br>v.<br><br>Hancock County Savings Bank, F.S.B., Rebecca Lamp,<br><br>Defendants. | ELECTRONICALLY FILED 9/20/2022 U.S. DISTRICT COURT Northern District of WV<br><br>COMPLAINT<br><br>CIVIL ACTION NO.<br>5:22-cv-231 (Bailey) |

## INTRODUCTION

1.   Plaintiff Pension Benefit Guaranty Corporation ("PBGC"), as statutory trustee of the Sears Holdings Pension Plan (the "Plan"), brings this action on behalf of

the Plan under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1301-1461 (2018). PBGC seeks to recover $15,235.81 held in the account of Defendant Rebecca Lamp ("Lamp") at a branch of Defendant Hancock County Savings Bank, F.S.B. ("HCSB"). Lamp wrongfully endorsed a check payable to a deceased participant of the Plan and deposited the money into her account. Under ERISA and the terms of the Plan, the money belongs to the Plan because the participant died before the check was issued.

## JURISDICTION & VENUE

2. The United States District Court for the Northern District of West Virginia (the "Court") has jurisdiction over this action, without regard to the amount in controversy, pursuant to 29 U.S.C. § 1303(e)(3).

3. Venue properly lies in this Court under 29 U.S.C. §1303(e)(2) because the Defendants reside in this district, and the acts giving rise to the claims took place in this district.

## PARTIES

4. PBGC is a wholly-owned United States government corporation and an agency of the United States established to administer and enforce the defined benefit pension plan termination insurance program under Title IV of ERISA. 29 U.S.C. § 1302(a). Subject to statutory limits, PBGC guarantees the payment of certain pension benefits upon the termination of pension plans covered by Title IV of ERISA. 29 U.S.C. §§ 1321, 1322, 1361.

5. When an underfunded pension plan terminates, PBGC usually becomes the statutory trustee of the plan and pays benefits to participants and beneficiaries, up to statutory limits. 29 U.S.C. §§ 1321-1322, 1342, 1361. In that capacity, PBGC has the power to "collect for the plan any amounts due to the plan," and to "commence, prosecute, or defend on behalf of the plan any suit or proceeding involving the plan." 29 U.S.C. §1342(d)(1)(B)(ii), (iv).

6. Defendant Lamp is a natural person. Upon information and belief, she resides is New Cumberland, West Virginia.

7. Defendant HCSB is a federally chartered mutual savings bank with its main office located in Chester, West Virginia.

## FACTS

### The Pension Plan

8. The Plan was established effective January 1, 1944, by Sears Holdings Corporation. On January 30, 2008, the Kmart Corporation Employee Pension Plan (sponsored by Kmart Holding Corporation) was merged with and into the Plan. The Plan was then amended and restated, effective January 30, 2008.

9. At all relevant times, the Plan was a defined benefit pension plan covered by Title IV of ERISA. *See* 29 U.S.C. § 1321.

10. The Plan was terminated and PBGC was appointed statutory trustee of the Plan pursuant to 29 U.S.C. § 1342(c), by an agreement dated February 11, 2019, between PBGC and Sears Holdings Corporation, as the Plan administrator.

The agreement established January 31, 2019, as the Plan's termination date under 29 U.S.C. § 1348.

### Issuance of Check

11. Randy Summers ("Summers") was employed by Kmart Corporation beginning on October 28, 1980, and he terminated employment on November 30, 1995. During that time, he accrued a pension benefit under the Plan.

12. On or about October 2, 2012, Summers applied for his pension benefit in the form of a lump sum. He listed his marital status as "divorced or widowed." Summers died on October 14, 2012, before receiving a benefit payment. A copy of Summers' death certificate is attached as Exhibit 1.

13. As discussed below, Summers' right to receive any benefit under the Plan ceased as of the date of death pursuant to § 7.5(d) of the Plan document.

14. Unaware of his death, the Plan mistakenly sent Summers a benefit check dated January 31, 2013, in the amount of $15,235.81 (the "Check"). A copy of the Check is attached as Exhibit 2.

### Wrongful Endorsement and Deposit of Check

15. Lamp wrongfully endorsed the Check by signing Summers' name. On March 4, 2013, she deposited the Check into her account at HCSB (the "Account'). Shortly after the Check was deposited, HCSB received a letter informing it that Lamp had forged Summers' signature. HCSB then froze the Account.

16. In January 2017, the Plan discovered that it had made the erroneous

payment. The Plan then attempted to recover the money from HCSB.

17. HCSB refused to relinquish the funds to the Plan without a judgment declaring that the Plan is entitled to the money.

18. After the Plan was terminated and PBGC was appointed as the trustee, the Plan's former administrator informed PBGC that the Plan had erroneously issued the Check.

19. PBGC sent a letter dated July 7, 2022, to HCSB demanding that it pay the $15,235.81 held in the Account to PBGC within 30 days. The letter was delivered by FedEx on July 8, 2022, but HCSB has not responded.

### Plan Terms Concerning Deceased Participants

20. Section 7.5(d) of the Plan document, which applies to both Sears and Kmart participants, states that "if a Participant dies before his or her Annuity Starting Date, no benefits will be payable to any person under the Plan, except [for certain death benefits]." A copy of § 7.5(d) and other relevant provisions in the Plan document are attached as Exhibit 3.

21. Article VI of the Plan states: "the only Death Benefits payable under the Plan are the Surviving Spouse Death Benefit." Because Summers was not married at the time that he applied for his pension benefit, no death benefits were payable under the Plan.

22. The term Annuity Starting Date is defined in § 2.4 of the Plan document as the "first day of the first period as of which payment of a Participant's

Retirement Income or Deferred Vested Income is paid as an annuity or in any other form." Summers' benefit application states that the benefit will be "calculated using a Payment Date of December 1, 2012." That Payment Date was Summers' Annuity Starting Date under the terms of the Plan.

23. Summers died on October 14, 2012, which was before the Annuity Starting Date. As a result, Summers' right to receive a benefit under the Plan ceased before the Check was issued. Accordingly, Summers was not entitled to the funds because he died before he was eligible to receive the payment.

24. Thus, the Plan issued the Check in error and the funds now held in the Account belong to the Plan regardless of who endorsed the Check or deposited it into the Account. As the statutory trustee of the terminated Plan, PBGC has the right to recover the funds. *See* 29 U.S.C. § 1342(d)(1)(B).

**Count I: Declaratory Relief**

25. PBGC repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint.

26. Under the terms of the Plan, Summers was not entitled to receive a benefit and the Check was erroneously issued to Summers.

27. The check was wrongfully endorsed by Lamp and deposited into the Account.

28. The Plan is the only party that has a legal right to the $15,235.81 held in the Account, and PBGC is authorized to collect the money on behalf of the Plan.

29. HCSB refuses to release the money to the Plan because Lamp, as the account holder, has not authorized the release.

30. Accordingly, there is an actual controversy over the ownership of the money in the Account.

31. To resolve the controversy, PBGC requests a declaration from the Court that $15,235.81 in the Account belongs to the Plan.

### Count II: Unjust Enrichment

32. PBGC repeats and realleges each and every allegation in the foregoing paragraphs of this Complaint.

33. The Plan erroneously issued the Check for $15,235.81. Lamp wrongfully endorsed the Check and deposited it in her account at HCSB

34. Because the Check was issued erroneously, neither Lamp nor HCSB is entitled to the funds and the money belongs to the Plan.

35. When the Check was deposited, the benefit of the money was conferred upon Lamp and HCSB at the Plan's expense.

36. Lamp and HCSB knew and appreciated that they had the benefit because the money was and still is in Lamp's account at HCSB.

37. The acceptance and retention by Lamp and HCSB of the money under such circumstances make it inequitable for them to retain the benefit without payment of its value.

38. By refusing to release the money to the Plan, HCSB is being unjustly enriched and should be ordered to pay the $15,235.81 held in the Account to PBGC as trustee of the Plan.

**PRAYER FOR RELIEF**

WHEREFORE, PBGC, as statutory trustee of the Plan, requests that the Court:

(1) Declare that $15,235.81 held in the account of Rebecca Lamp at Hancock County Savings Bank, F.S.B. belongs to the Plan; and

(2) Order Hancock County Savings Bank, F.S.B. to pay $15,235.81 from the account of Rebecca Lamp to PBGC as the statutory trustee of the Plan; and

(3) Grant such further relief as the Court deems just and proper.

Dated: September 20, 2022                     Respectfully Submitted,

|  |  |
|---|---|
| Local Counsel: | s/ Mark R. Snyder |
|  | KAREN MORRIS |
|  | General Counsel |
| /s/ Stephanie K. Savino | DANIEL S. LIEBMAN |
| STEPHANIE SAVINO (WV 13684) | Deputy General Counsel |
| Assistant U.S. Attorney | KENNETH J. COOPER |
| United States Attorney's Office | Assistant General Counsel |
| Northern District of | MARK R. SNYDER |
| West Virginia | Attorney |
| 1125 Chapline Street | PENSION BENEFIT |
| Suite 3000 | GUARANTY CORPORATION |
| P.O. Box 591 | Office of the General Counsel |
| Wheeling, WV 26003 | 445 12th St SW, |
| Tel: (304) 234-7706 | Washington, D.C. 20024-2101 |

Fax: (304) 234-0110
Stephanie.K.Savino@usdoj.gov

Tel.: (202) 229-3423
Fax: (202) 326-4122
Emails: snyder.mark@pbgc.gov *and*
efile@pbgc.gov

*Attorneys for Pension Benefit Guaranty Corporation*